**William R. WRIGLEY (d/b/a Applied Data Systems Co.)**

v.

**COMPUDYNE CORPORATION et al.**

**Civ. A. No. 74-2563.**

United States District Court,
E. D. Pennsylvania,
Civil Division.

March 13, 1975.

------◆------

Joel S. Goldhammer, Seidel, Gonda & Goldhammer, Philadelphia, Pa., for plaintiff.

Norman L. Norris, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

CAHN, District Judge.

Plaintiff is suing to recover $19,665 which is allegedly due to him as minimum royalties payable pursuant to a licensing contract dated December 31, 1968. This contract referred to patent application serial No. 733,736 (hereinafter referred to as '736) involving controls for electronic data processing apparatus. This '736 patent never issued, but a later patent was issued to plaintiff as U.S. Patent 3,626,379 (hereinafter referred to as '379). Defendants, in addition to interposing fifteen specific defenses, have filed what they denominate a compulsory counterclaim under Fed.R.Civ.P. 13. Count I of this counterclaim seeks a declaratory judgment as to the invalidity of '379.

The plaintiff has moved to dismiss Count I of the counterclaim on the ground that there is no justiciable controversy since the defendants are not utilizing the patented apparatus of '379 and the defendants have not been threat-

ened with an action for infringement of the patent. Plaintiff further argues that paragraph 12E of the agreement dated December 31, 1968, makes the issue of the '379 patent irrelevant. The first sentence of paragraph 12E provides as follows:

> "The provisions of this Agreement, including this clause 10 shall in no way be affected because of the failure of a patent to issue on patent application Serial No. 733,736."

The '736 application was rejected by the patent office, but the '379 application, which apparently corrected certain defects in the former application, was granted on December 7, 1971. The defendants, however, cancelled the agreement of December 31, 1968, by letter of June 25, 1971. That agreement gave the defendants the right to cancel, but six months' prior written notice was required before the cancellation became effective. Therefore, the effective date of the cancellation was December 31, 1971.

In essence, the plaintiff claims that there is no case or controversy involving patent '379 because the agreement between the parties requires payment of guaranteed minimum royalties irrespective of the issuance of a patent. The defendants, on the other hand, contend that Lear, Inc., v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1968) permits the counterclaim seeking a judgment declaring the invalidity of patent '379. The problem with defendants' reliance on Lear is that the issue of the licensee's liability for contractual royalties before the issuance of a patent was not decided in that case and was remanded to the California state courts with instructions that the estoppel doctrine could no longer be properly invoked by the licensor to prevent the licensee from contesting his obligation to pay pre-patent royalties.

In further support of their position, defendants refer to Thiokol Chemical Corp. v. Burlington Industries, Inc., 448 F.2d 1328 (3rd Cir. 1971) wherein the court permitted the maintenance of a declaratory judgment action to declare a patent invalid. Although defendants argue that the basis for permitting Thiokol's declaratory judgment action to proceed was the fact that the patent licensor brought suit for royalties, I disagree. In my judgment, the basis for Judge Hastie's decision was not only that Burlington sued for royalties but, in addition, the fact that the patent licensee continued to utilize after termination of the license agreement the process that the licensor considered to be included in its patent. Thiokol was sued in a state court action for damages for alleged infringement and it sought to have the patent in question declared invalid in a federal court action. Here the defendants have not utilized the patented apparatus at all since sometime before December 7, 1971, and Wrigley's counsel in his brief asserts that there are no pending infringement actions against the defendants.

■ Therefore, in *Thiokol*, the validity of the patent was key to the resolution of the state court law suit for damages based upon an alleged infringement. On the other hand, in the within case, the validity of patent '379 has nothing to do with the outcome of the law suit because the defendants were obligated by contract to pay minimum guaranteed royalties regardless of the issuance of a patent. Therefore, plaintiff's motion to dismiss Count I of the defendants' counterclaim must be granted on the ground that there is no justiciable controversy involving '379. However, the plaintiff may not utilize the doctrine of estoppel to prevent the defendants from contesting the payment of any royalties.

■ The defendants also contend that because patent '379 was issued several weeks before the effective termination of the license agreement, all royalties to be paid under the contract are to be made pursuant to that patent. However, since the licensing contract provided for payment irrespective of the issuance of a patent, plus the fact that the defendant licensees had apparently aban-

doned the benefits of the licensing agreement even before the issuance of '379, the invalidity of that patent will be irrelevant to the outcome of the litigation for the minimum guaranteed royalties and, therefore, is not justiciable at this time.